**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

MIGUEL ARIAS, a/k/a :
Alexis R. Liriano, :
 :
      Plaintiff, :
 : CIVIL ACTION NO.
v. : 2:07-CV-0135-RWS
 :
SHERIFF JOE H. ROBINSON, :
*et al.*, :
 :
      Defendants. :

## **ORDER**

This case is before the Court for consideration of the Motion for Summary Judgment [53] by Defendants Debra Barkhurst ("Barkhurst" or Nurse Barkhurst") and Dr. Byron Thompson ("Thompson"or "Dr. Thompson"). After reviewing the entire record, the Court enters the following Order.

### **Factual Background[1]**

Plaintiff was incarcerated in the Barrow County Detention Center

---

[1]The Factual Background is taken primarily from Defendants' Statement of Material Facts to Which No Genuine Issue Exists for Trial [53-6]. Though Plaintiff failed to file a response to the Statement of Material Facts as required by Local Rule 56.1B, the Court has taken into account Plaintiff's Affidavit [59-4] submitted with his Response to the Motion for Summary Judgment.

("BCDC") from November 17, 2004 to April 11, 2007, except for a period from April 21, 2005 through November 17, 2005 when he was housed at the Newton County jail. Plaintiff was a pre-trial detainee charged with cocaine trafficking. When Plaintiff was booked into the Barrow County Jail, weakness on his left side was noted on the intake sheet. Plaintiff was housed in a two-man cell that had been adapted for a third inmate by the addition of a "stack-a-bunk."

Nurse Barkhurst and Dr. Thompson were employed at all times relevant to this action by Georgia Correctional Health, LLC ("GCH"), which was the private vendor of medical services for BCDC. Nurse Barkhurst is the Nurse Administrator, and Dr. Thompson is the jail physician.

On May 23, 2006 at approximately 8:00 p.m., Plaintiff tripped and fell while he was exiting his cell. As a result of his fall, he suffered an injury to his leg. Security personnel moved Plaintiff from his cell to a holding cell.

At 7:30 a.m. on May 24, 2006, Plaintiff complained to the sick call nurse about his injury. The medical department of the jail was notified that Plaintiff was complaining of leg pain. The jail nurse examined Plaintiff and noted that his vital signs were all within normal limits and that he had slight swelling to

2

his lower leg. The jail nurse placed Plaintiff on the sick-call list to see Dr. Thompson who was scheduled to be at the jail that morning for sick call.

Shortly before 12:00 p.m. on May 24, 2006, Nurse Barkhurst and Dr. Thompson learned of Plaintiff's injury and leg pain complaint. At 12:00 p.m., Nurse Barkhurst and Dr. Thompson saw Plaintiff and evaluated him. Dr. Thompson ordered that Plaintiff be sent to the local emergency room for x-rays to rule out the possibility of a fracture. At 12:15 p.m., Nurse Barkhurst contacted jail security to arrange for transport of Plaintiff to the emergency room. She also contacted the emergency room to notify them that Plaintiff would be transported to the facility and x-rays of Plaintiff's leg were needed. Plaintiff was transported to the emergency room at 1:15 p.m.

After the radiology report was returned to the jail, Dr. Thompson ordered an orthopedic evaluation of Plaintiff as the radiology report indicated that Plaintiff had two fractures which were not properly aligned for healing. Nurse Barkhurst contacted Dr. Rainey, a local orthopedist , the following morning and provided Plaintiff's x-rays to Dr. Rainey to evaluate. Dr. Rainey evaluated Plaintiff's x-rays and determined that surgery would be needed to set Plaintiff's leg fractures for proper healing. Dr. Rainey scheduled and performed

3

Plaintiff's surgery pursuant to his surgical schedule and operating room availability. Neither Nurse Barkhurst nor Dr. Thompson had any input or control over the scheduling of Plaintiff's surgery. Dr. Rainey successfully surgically set Plaintiff's leg fractures and continued with Plaintiff's post-operative treatment.

At Plaintiff's July 21, 2006 appointment with Dr. Rainey, Dr. Rainey determined that Plaintiff could be moved to the general population. At Plaintiff's appointment with Dr. Rainey on August 21, 2006, Dr. Rainey determined that Plaintiff had healed completely and correctly. Plaintiff then requested that Dr. Rainey order physical therapy for him as Plaintiff believed he was having some gait issues. Dr. Rainey informed Plaintiff he would order the physical therapy but failed to notify the jail staff of the same. On August 31, 2006, Plaintiff submitted a sick call request to "the nurse administrator" inquiring about the status of his physical therapy. Nurse Barkhurst was on vacation for the Labor Day weekend when the request was submitted and received the sick call request on September 6 when she returned from vacation. Nurse Barkhurst reviewed Plaintiff's medical file for any order for physical therapy and was unable to locate one. She contacted Dr. Rainey's office to

inquire whether physical therapy had been ordered. Nurse Burkhurst learned that Dr. Rainey had ordered physical therapy but that he failed to provide a prescription or order for the same to BCDC. Nurse Barkhurst contacted Dr. Thompson and relayed this information to him.

Dr. Thompson asked Nurse Barkhurst to contact the physical therapist to determine whether Plaintiff needed to be transported to their facility or whether he could do the physical therapy at the jail. Nurse Barkhurst contacted the physical therapist and learned that Plaintiff would need to be transported to the physical therapist's facility for a session to receive instruction on the exercises he should perform, and then he could perform the exercises at the jail. Defendant Barkhurst scheduled Plaintiff a visit with the physical therapist for the first available time. The physical therapist provided Plaintiff with a large rubber band and exercises to perform with the rubber band to strengthen his leg. (Aff. of Barkhurst, Ex. 1 [53-4], at 35.)

As the rubber band was large and could be used as a weapon in population, jail security housed Plaintiff in a cell alone so that he could do his physical therapy exercises. Defendants assert that Plaintiff repeatedly refused to do his exercises despite medical personnel repeatedly informing him that he

5

needed to do the exercises. Plaintiff asserts that he was not provided the appropriate props necessary to perform the exercises and that he was placed in a cell with inadequate room to perform his exercises. Plaintiff also states that he was not provided with ice to apply to his leg following exercises as required by the physical therapist. Included in the record is a Release from Responsibility for Medical Coverage signed by Plaintiff on October 5, 2006 stating that he "does not want to use the green band given to him by Dr. Rainey." (Id. at 38.)

There is no evidence in the record of any policy, custom, or practice of GCH discouraging immediate and appropriate medical care for injuries to inmates. Also, there is no evidence of any policy, custom, or practice of GCH that would interfere with properly prescribed physical therapy for an inmate.

## **Discussion**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears

6

'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the

AO 72A
(Rev.8/82)

non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

Plaintiff asserts claims against Defendants Barkhurst and Thompson, in both their individual and official capacities, for deliberate indifference to his medical care. Specifically, Plaintiff charges that Defendants delayed his treatment for 17 hours after his injury. Also, he asserts that he was not provided the necessary props and/or accommodations for accomplishing the physical

8

therapy that was prescribed for him following surgery for his injuries.[2]

The Eighth Amendment prohibits deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). To establish deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). See also Hill v. Dekalb Reg. Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994) (noting that "a 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

A plaintiff may establish a prison official's deliberate indifference by showing that the official failed or refused to provide care for a serious medical condition, delayed care "even for a period of hours," chose "an easier but less

---

[2] Plaintiff also complained that he was not treated with ice or provided with pain medication by Dr. Thompson before Plaintiff was transported to the hospital. These claims were not authorized to proceed at the time of the frivolity determination of Plaintiff's Complaint. (See August 1, 2008 Order [7] at 8-11.)

9

efficacious course of treatment," or provided care that was "grossly inadequate" or "so cursory as to amount to no treatment at all." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). See Hill, 40 F.3d at 1187 (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain") (citation and internal quotations omitted); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (stating that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim").

Negligence, however, even rising to the level of medical malpractice, does not constitute deliberate indifference. McElligott, 182 F.3d at 1254. See also Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999) (noting that it is well-settled that "medical malpractice–negligence by a physician–is insufficient to form the basis of a claim for deliberate indifference"), amended by 205 F.3d 1264 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim). Nor does a simple disagreement over a diagnosis or course of treatment constitute deliberate

10

indifference. As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim. See Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991); see also Adams, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983").

As to Plaintiff's claim that there was undue delay in sending Plaintiff to the hospital for his injuries, Defendants Barkhurst and Thompson have not been shown to be responsible for that delay. These Defendants were not aware of Plaintiff's injuries until just before 12:00 p.m. on May 24, 2006. Immediately after they examined Plaintiff, they made arrangements to have him transported to the emergency room. He was transported at 1:15 p.m. These facts will not support a finding of undue delay by these Defendants.

Plaintiff also complains about the physical therapy program he was provided. The program provided to Plaintiff was prescribed by the physical therapist. The fact that Plaintiff disagreed with the prescribed program does not establish the use of that program as deliberate indifference.

11

As to Plaintiff's claim that he was not afforded physical therapy props and accommodations, once again, the record does not support the claim. After Plaintiff submitted his sick call request inquiring about his physical therapy, these Defendants were responsible for facilitating Plaintiff's physical therapy. Prior to the sick call request, these Defendants had no knowledge that Dr. Rainey had prescribed physical therapy. Nurse Barkhurst immediatelly inquired of Dr. Rainey about physical therapy and obtained the prescription. As for Plaintiff's complaint that he was not provided physical therapy props, the record shows that Plaintiff was provided with the rubber band from the physical therapist. As for Plaintiff's cell assignment, Dr. Rainey decided on July 21 that Plaintiff could return to general population. Also, there is no evidence that these Defendants were responsible for Plaintiff's cell assignment within general population. More importantly, the record establishes that Plaintiff refused to do his physical therapy exercises. Defendants can not be held liable for failing to provide a treatment in which Plaintiff refused to participate.

Plaintiff has also asserted official capacity claims against these Defendants. An official capacity claim is a claim against the entity for which the defendant is an agent. See McMillian v. Monroe County, 520 U.S. 781, 785

n.2, 117 S.Ct. 1734, 138 L. Ed.2d 1(1997) ("We have explained that a suit against a government officer 'in his official capacity' is the same as a suit against the entity of which [the] officer is an agent.")(internal citations omitted). In order to impose *respondeat superior* liability on the employer, Plaintiff must establish the "alleged constitutional deprivation occurred because of a corporation's custom, policy, or practice." Hatten v. Prison Health Services, No. 2:05-6-FtM-99DNF, 2006 WL 4792785(M.D. Fla. Sept. 13, 2006).

Plaintiff's official capacity claims fail because Plaintiff has presented no evidence of any policy, custom, or practice of GCH discouraging immediate and appropriate medical care for injuries to inmates. Also, there is no evidence of any policy, custom, or practice of GCH that would interfere with properly prescribed physical therapy for an inmate.

Based on the foregoing, Plaintiff has failed to state a claim for deliberate indifference against Defendants Barkhurst and Thompson in either their individual or official capacities. Therefore, these Defendants are entitled to summary judgment.

13

## **Conclusion**

Based on the foregoing, the Motion for Summary Judgment of Defendants Barkhurst and Thompson [53] is hereby **GRANTED**.

**SO ORDERED**, this   26th   day of March, 2010.

_____
**RICHARD W. STORY**
United States District Judge