# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

MIGUEL ARIAS,     :
a/k/a Alexis R. Liriano,    :
          :
   Plaintiff,    :
          :  CIVIL ACTION NO.
   v.      :  2:07-CV-0135-RWS
          :
SHERIFF JOE H. ROBINSON, :
*et al.*,        :
          :
   Defendants.  :

## ORDER

This case is before the Court for consideration of the Motion for

Summary Judgment [68] of Defendants Jud Smith, Joel H. "Joe" Robinson,

Capt. Mike Katsegianes, Sgt. Josh Jonas, Officer William Myers, and Officer

Nick Hansen (referred to collectively as "Barrow County Defendants"). The

Barrow County Defendants filed a Collective Motion for Summary Judgment

with a single Statement of Material Facts to Which There Is No Genuine Issue

to be Tried, but submitted three separate briefs for three separate groups of

defendants. The Court will address the Motion in similar fashion. The Factual

Background will be applicable to the motions of all of the Barrow County

Defendants.  Separate sections of the Order will then address the separate

motions using the same groupings as those used by these Defendants.  Plaintiff

also filed a Motion for Leave to Respond and for Extension of Time [83].

Essentially, Plaintiff seeks to file a surreply to Defendants' Reply Brief.

Plaintiff has failed to present any circumstances that would justify the filing of a

surreply.  Therefore, the Motion for Leave to Respond and for Extension of

Time [83] is **DENIED**.

## I. Factual Background[1]

Plaintiff was incarcerated in Barrow County Detention Center ("BCDC")

from April 16, 2004 through April 10, 2007, except for a period from April 21,

2005 through November 17, 2005 when he was housed at the Newton County

Jail.  Plaintiff was a pre-trial detainee charged with cocaine trafficking.

Plaintiff suffered from a partial paralytic condition which caused him difficulty

in moving the left side of his body, including his left leg.  During his detention,

Plaintiff submitted many medical request forms.  Defendants Jonas and Myers

---

[1] The Factual Background is taken from the Barrow County Defendants'
Collective Statement of Material Facts to Which There is No Issue to be Tried [68-2].
Though Plaintiff did not file a proper response to the Statement of Undisputed Facts as
required by the Local Rules, the Court has considered his second Affidavit [78-5]
submitted with his Response to the Motion for Summary Judgment.

AO 72A
(Rev.8/82)

were each aware of Plaintiff's regular complaints of pain and requests for pain medication.

On May 23, 2006, at approximately 8:15 p.m., Plaintiff fell while exiting his cell. Another inmate called for help, and Defendants Jonas and Myers came to the cell and attended to Plaintiff. Plaintiff expressed that he was in pain and that he could not stand or walk on his leg. A wheel chair was retrieved for Plaintiff's use, and he was placed in the chair. He was taken to a holding cell in the booking area of the jail and placed on a bed.

Plaintiff was maintained in the holding cell for observation, and Defendant Jonas later checked on Plaintiff but observed nothing remarkable about his condition. From the time of Plaintiff's fall until the end of their shift, neither Jonas nor Myers observed any broken skin, blood, misalignment, swelling, disfigurement, or discoloration of Plaintiff. Neither Defendant Robinson nor Katsegianes was present at the jail during the relevant time period.

Medical services at the Barrow County Detention Center were provided by Georgia Correctional Health, Inc. ("GCH"), a private vendor of contract medical services. Plaintiff was treated by GCH personnel after his fall. When

Plaintiff was seen by GCH personnel at approximately 7:30 a.m. on May 24, 2006, he was scheduled to meet with a physician later in the day for evaluation. Around noon, Plaintiff was seen by Nurse Barkhurst and Dr. Thompson, GCH personnel. Dr. Thompson ordered x-rays. Plaintiff was taken to Barrow Regional Medical Center and x-rayed.

After receiving the radiology report that identified Plaintiff's fractures, Dr. Thompson ordered an orthopedic evaluation. Nurse Barkhurst contacted Dr. Rainey, a local orthopedist who scheduled an evaluation of Plaintiff. As a result of the evaluation, Dr. Rainey subsequently performed surgery to set Plaintiff's leg fractures. According to Dr. Thompson, "Plaintiff suffered no detrimental effect from any alleged delay in the provision of medical services." (Thompson Aff. [57] at ¶ 16.) Plaintiff presents no evidence to the contrary.

On July 21, 2006, Plaintiff was cleared by medical providers to be returned to the general population. When Plaintiff was ordered by medical providers to be returned to the general population, medical providers informed Defendant Hansen that Plaintiff should be assigned to a bottom bunk or a floor bunk. On July 21, 2006, Detention Officer Allbright went to Plaintiff's cell to escort him to a general population cell. Plaintiff refused to return to the cell and

4

demanded to be placed in solitary confinement. Officer Allbright conferred with Defendant Hansen who offered to take over for Allbright. Defendant Hansen approached Plaintiff and advised him that since he had been medically cleared to return to the general population, his cell assignment was not negotiable and he must gather his belongings to relocate.

The parties offer substantially different versions of what transpired following this discussion. According to Defendant Hansen, Plaintiff resisted his less forceful efforts to direct him to an assigned cell and "swept his hands near Defendant Hansen's face." (Hansen Aff. at ¶18.) Defendant Hansen then physically secured Plaintiff and removed him from the cell. According to Plaintiff, Defendant Hansen committed an unprovoked assault upon him and repeatedly slammed him against the cell wall and metal base of the bunk. Plaintiff also states, "Defendant Hansen bounced up and down on [Plaintiff's] left leg telling [Plaintiff] he would 'break my leg again.'" (Pl.'s Second Aff. [78-5] at ¶16.) Immediately after the incident, Defendant Hansen reported the incident to the watch commander and completed an Incident Report.

On August 21, 2006, at Plaintiff's last appointment with Dr. Rainey, Dr. Rainey determined that Plaintiff's fracture had healed completely and correctly.

AO 72A
(Rev.8/82)

Dr. Rainey ordered physical therapy but failed to notify the jail staff. On August 31, 2006, Plaintiff submitted a Sick Call Request to "the nurse administrator" inquiring about the status of his physical therapy. Nurse Barkhurst was on vacation but received Plaintiff's Sick Call Request when she returned on September 6. She immediately reviewed Plaintiff's file and found no order for physical therapy. She contacted Dr. Rainey's office and learned that Dr. Rainey had ordered physical therapy but failed to provide a prescription or order for same. When Nurse Barkhurst advised Dr. Thompson of this information, Dr. Thompson asked Nurse Barkhurst to contact the physical therapist to determine whether Plaintiff needed to be transported to their facility or could do the physical therapy at the jail. Nurse Barkhurst was advised by the physical therapist that Plaintiff would need to be transported to their facility for a session to receive instruction and then he could perform the exercises at the jail. Nurse Barkhurst scheduled a visit with the physical therapist for the Plaintiff.

The physical therapist provided a large rubber band and exercises to perform. As the rubber band was large and could be used as a weapon in population, jail security housed Plaintiff in a cell alone so that he could do his

physical therapy exercises.  Plaintiff repeatedly refused to do his exercises despite medical personnel repeatedly informing him that he needed to do his exercises.

At all times relevant to Plaintiff's claims, all medical treatment rendered to inmates was performed by personnel designated by GCH.  All decisions regarding any medical treatment for inmates were made by the medical providers not by any staff of the detention center.  Specifically, Defendant Katsegianes had no role in decisions regarding any medical treatment for inmates.

Barrow County Detention Center makes three types of forms available to inmates: (i) Inmate Complaint/Grievance Form; (ii) Inmate Request Form; and (iii) Request for Medical Service.  Inmates are directed to present their comments, requests, complaints, and grievances to a detention officer, either verbally or using one or more of the appropriate forms.  According to the Barrow County Defendants, an administrative grievance procedure is in place at the Barrow County Detention Center which is implemented by the submission of a Grievance Form by an inmate to a detention officer.  The Grievance Form is routed to the classification officer for resolution.  If he is unable to resolve

the grievance, it will be forwarded to the assistant jail commander under exceptional circumstances.

Defendant Katsegianes does not recall ever reviewing an Inmate Grievance Form submitted by Plaintiff. He specifically states that he does not recall a Grievance Form related to the placement of bunks on the floors of cells or related to Plaintiff's physical therapy. In his deposition, Plaintiff admitted that he never submitted a Complaint or Grievance Form regarding Defendants Jonas or Myers in connection with the events of May 23 and 24, 2006.

In spite of Defendant Katsegianes' statement that he was not familiar with any grievance filed by Plaintiff, Plaintiff testified that he used the grievance procedure on no less than five (5) occasions. However, Plaintiff asserts that the grievance procedure is ineffective in that inmates never receive responses to their grievances. Because Plaintiff contends the grievance procedure is meaningless, Plaintiff asserts that he should not be required to exhaust that process.

AO 72A
(Rev.8/82)

## II. Discussion

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

AO 72A
(Rev.8/82)

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the

nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## A. Defendants Smith, Robinson, and Katsegianes

In the Complaint, Plaintiff alleges claims against Defendants Robinson and Katsegianes pursuant to 42 U.S.C. § 1983 for deliberate indifference to his safety (Claim 1) and for deliberate indifference to his medical care (Claim 5). Plaintiff also assert a state law negligence claim against these Defendants (Claim 1). The claims are asserted against these Defendants in both their individual and official capacities. At the time the Complaint was filed, Defendant Robinson was Sheriff of Barrow County. On January 1, 2009, Defendant Smith succeeded Defendant Robinson as Sheriff. The Court will therefore treat the official capacity claims as being against Defendant Smith and the individual capacity claims as being against Defendant Robinson. Defendant Katsegianes is the Commander of the Jail Division of the Barrow County Sheriff's Office and has been the officer in charge of operations at BCDC since April 2005. Both the individual and official capacity claims will be considered against Defendant Katsegianes.

1. Official Capacity Claims in Claim 1

Defendants Smith and Katsegianes assert that they are entitled to Eleventh Amendment immunity for the official capacity claims. It is well-settled that the Eleventh Amendment, as a general matter, precludes a person from seeking monetary damages against the State or a state official acting in his or her official capacity, unless the plaintiff can demonstrate that sovereign immunity has been waived or abrogated. Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995). Thus, the Court must first determine whether these Defendants were acting as state officials and if so, whether sovereign immunity has nevertheless been waived or abrogated.

In Grech v. Clayton County, 335 F.3d 1326 (11th Cir. 2003), the Eleventh Circuit held that a Georgia sheriff is a state official for purposes of executing his law enforcement authority in enacting policies for conducting arrests. And in Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003), the Eleventh Circuit held that a Georgia sheriff is a state official for purposes of executing his law enforcement authority in enacting policies at a county jail. More recently, the Eleventh Circuit decided Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313 (11th Cir. 2005), in which it stated:

>[In <u>Manders</u>,] we decided that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." [Cit.] Thus <u>Manders</u> controls our determination here; [the sheriff] functions as an arm of the State—not [the] County—when promulgating policies and procedures governing conditions of confinement at the [ ] County Jail. Accordingly, even if [the plaintiff] had established a constitutional violation, [the sheriff] would be entitled to Eleventh Amendment immunity from suit in his official capacity.

400 F.3d at 1325.

Here, Plaintiff asserts that these Defendants violated 42 U.S.C. § 1983 by enacting a policy that allowed a mattress to be placed on the floor of a cell. Plaintiff fails to distinguish these actions from the sheriffs' roles in <u>Grech</u>, <u>Manders</u>, and <u>Purcell</u>, which the Eleventh Circuit made clear were roles in which a sheriff acted on behalf of the state. In light of those cases, the Court concludes that these Defendants acted as an arm of the State of Georgia—and not Barrow County—in relation to the bunk policies at the Barrow County Detention Center. Accordingly, Plaintiff must demonstrate that the state has waived or Congress has abrogated Eleventh Amendment immunity in order to prevail on his claims. "[T]he plaintiff bears the burden of establishing subject matter jurisdiction, and, thus, must prove an explicit waiver of immunity." <u>See</u>

Ishler v. Internal Revenue, 237 F. App'x 394, 398 (11th Cir. 2007) (citations omitted). Plaintiff has failed to prove an explicit waiver of immunity. Therefore, Defendants Smith and Katsegianes are entitled to summary judgment on the official capacity claims for deliberate indifference to safety.

2. Individual Capacity Claims in Claim 1

As for the individual capacity claims against Defendants Robinson and Katsegianes for deliberate indifference to safety, these Defendants assert that they are entitled to qualified immunity. Qualified immunity provides "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Its purpose is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

14

Qualified immunity is a question of law for the court. <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993). To be entitled to qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." <u>Lee</u>, 284 F.3d at 1194. The burden then shifts to the plaintiff. <u>Id.</u> at 1194. There is a two-part test to determine whether a defendant is entitled to qualified immunity. First, a court asks " 'whether [the] plaintiff's allegations, if true, establish a constitutional violation.' " <u>Vinyard</u>, 311 F.3d at 1346 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Second, after sufficiently stating a constitutional violation, a court must ask whether the right was "clearly established." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). The salient question is whether the state of the law at the time of the alleged violation gave officials "fair warning" that their acts were unlawful. <u>Hope</u>, 536 U.S. at 740; <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1078 (11th Cir. 2003); <u>see</u> <u>also</u> <u>Vinyard</u>, 311 F.3d at 1350-53 (articulating a

15

tripartite analytical framework for ascertaining whether right is "clearly established").

While materially similar precedent or "broad statements of principle" can establish a right with sufficient clarity to deny an officer qualified immunity, they are not in all instances required to provide officials with the requisite notice. See Vinyard, 311 F.3d at 1350-52. In some cases, "the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." Id. at 1350.

While the Constitution does not require jails to be places of comfort, it also does not permit them to be inhumane, "it is now settled that the . . . conditions under which [an inmate] is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 831 (1994) (quoting Helling v. McKinney, 509 U.S. 25 (1993)). To show a valid Eighth Amendment claim for deliberate indifference to Plaintiff's safety, Plaintiff must "produce evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). For a jail official to be

AO 72A
(Rev.8/82)

deliberately indifferent, the official must know of and disregard "an excessive

risk to inmate health or safety; the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." Farmer, 114 S. Ct. at 1979.

> [D]etermining whether [Plaintiff's] conditions of confinement
> violate the Eighth Amendment requires more than a scientific and
> statistical inquiry into the seriousness of the potential harm and the
> likelihood that such injury to health will actually [occur] . . . It also
> requires a court to assess whether society considers the risk that the
> prisoner complains of to be so grave that it violates contemporary
> standards of decency to expose anyone unwillingly to such a risk.
> In other words, the prisoner must show that the risk of which he
> complains is not one that today's society chooses to tolerate.

Helling v. McKinney, 509 U.S. 25, 36, 113 S. Ct. 2475 (1993).

Plaintiff alleges that placing a mattress on the floor in his cell was an act

of deliberate indifference to his safety because of his limited mobility due to his

partial paralysis.[2]  Plaintiff states that he filed a number of "grievances

---

[2]In their Motion, in addition to the indifference to safety claim, these
Defendants assume Plaintiff is asserting a claim based on inhumane conditions based
on a having a mattress on the floor of his cell.  However, it appears from Plaintiff's
pleadings that his claim is based solely on deliberate indifference to safety.  In any
event, Plaintiff cannot prevail on an inhumane conditions claim based on a mattress on
the floor.  Having to sleep on a mattress on the floor does not amount to a
constitutional deprivation.  See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th
Cir. 1985) (holding that fact that detainee in county jail had to sleep on mattress on
floor due to overcrowding did not amount to a constitutional deprivation when not
required arbitrarily); Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986) (dismissing

complaining about the safety hazard of the bunk and [his] inability to safely traverse the cell and its door opening." (Pl.'s Second Aff. [78-5] at ¶ 6.) Accepting that Plaintiff may have placed Defendants on notice that he had a safety concern, the Court finds that the placement of mattress in the floor of a two-man cell does not create a substantial risk of serious harm. There is no evidence that falls had occurred previously because of this arrangement. Plaintiff had been incarcerated at BCDC for approximately eighteen months before his fall and had not suffered a previous fall.

At the times relevant to Plaintiff's claim, these Defendants were acting within the scope of their discretionary authority. Because Plaintiff has failed to establish that Defendants's actions resulted in a constitutional violation, these Defendants Robinson and Katsegianes are entitled to qualified immunity for the individual capacity claim in Claim 1.

---

claim that relied on allegation that requiring detainees to sleep on mattresses on floor is unconstitutional); Datz v. Hutson, 806 F. Supp. 982, 989 (N.D. Ga. 1992) (holding that requiring inmate to sleep on a mattress on the floor was not a constitutional violation).

AO 72A
(Rev.8/82)

3. Official Capacity Claims in Claim 5

If Defendants Smith and Katsegianes are treated as agents of the State of Georgia for Plaintiff's deliberate indifference to medical care claims, the official capacity claims in Claim 5, just as those in Claim 1 *supra*, are subject to dismissal based on Eleventh Amendment immunity.  However, citing the analysis in Dukes v. Georgia, 428 F. Supp.2d 1298 (N.D. Ga. 2006), these Defendants assert that even if they are treated as agents of Barrow County, they are still entitled to summary judgment on the official capacity claims.

Assuming that these Defendants acted as agents of Barrow County, they assert that Plaintiff cannot show any evidence of a policy or custom of Barrow County that caused the alleged indifference to medical care of Plaintiff.  A local government cannot be held liable under Section 1983 on a *respondeat superior* theory.  Monell v. Dept. of Social Serve. Of City of N.Y., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  The Supreme Court requires "a plaintiff seeking to impose liability on a [local government] under § 1983 to identify a [local government] 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  At the relevant time, Barrow County

contracted with GCH to provide all medical services at BCDC. There is no evidence of any Barrow County policy affecting the provision of such services that would support a finding of deliberate indifference to the medical needs of Plaintiff. Therefore, Defendants Smith and Katsegianes are entitled to summary judgment on the official capacity claims in Claim 5.

4. Individual Capacity Claims in Claim 5

Plaintiff asserts individual capacity claims against Defendants Robinson and Katsegianes in Claim 5 for deliberate indifference to medical care. However, he seeks to impose liability upon them in their roles as supervisors. There is no evidence that either of these Defendants personally participated in the alleged unconstitutional conduct.

Noting the well-established rule "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability," the Eleventh Circuit has stated that, instead, a supervisor is liable in his individual capacity under § 1983 only when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir.

AO 72A
(Rev.8/82)

2003). This causal connection can be established by showing that the responsible supervisor (1) knew about and failed to correct a widespread history of abuse or (2) had a custom or policy that resulted in a constitutional violation, or that (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (Internal quotations omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id.

Because Plaintiff has not presented evidence of any personal participation by either of these Defendants or of any policy by either of these Defendants that has deprived him of a constitutional right, these Defendants are entitled to summary judgment for the individual capacity claims in Claim 5.

5. State Law Claims

In Claim 1, Plaintiff asserts state law negligence claims against Defendants Robinson and Katsegianes. Having found that all of Plaintiff's federal claims against these Defendants are due to be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3) (providing court may decline to exercise

supplemental jurisdiction over state law claims if it has dismissed the claims over which it had original jurisdiction). Therefore, the state law claims will be dismissed, without prejudice.

**B. Defendants Jonas and Myers**

Plaintiff asserts a claim against Defendants Jonas and Myers based upon their failure to obtain medical treatment for Plaintiff following his fall (Claim 2). The fall occurred at approximately 8:00 p.m. on May 23, 2006, and these Defendants moved Plaintiff to a holding cell immediately after the fall. Plaintiff was not seen by medical personnel until 7:30 a.m. on May 24, 2006. These Defendants assert that Plaintiff's claims against them must fail because Plaintiff failed to exhaust administrative remedies regarding these claims. Plaintiff never filed any form or grievance against either Defendant related to the facts and circumstances of his fall and subsequent treatment on May 23-24, 2006.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 . . ., or any other Federal law, by a prisoner . . . until such

administrative remedies as are available are exhausted." This section mandates

exhaustion of a prisoner's administrative remedies and courts do not have

discretion to waive the exhaustion requirement. Booth v. Churner, 532 U.S.

731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); Bryant v. Rich, 530

F.3d 1368, 1372-73 (11th Cir.), cert. denied, ___ U.S. ___, 129 S. Ct. 733

(2008); Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Moreover, even if a prisoner has initiated a grievance procedure, he must fully

complete that process before filing a lawsuit.  See Harper v. Jenkin, 179 F.3d

1311, 1312 (11th Cir. 1999) (holding prisoner required to seek leave to file out-

of-time grievance appeal prior to bringing suit). Although the PLRA's

exhaustion requirement technically applies to those actions brought by prisoners

"with respect to prison conditions," 42 U.S.C. § 1997e(a), the expansive

reading given the exhaustion requirement effectively results in its application to

all prisoner suits with respect to the effects of actions by government officials

on the lives of persons confined in prison. Dillard v. Jones, 89 F. Supp. 2d

1362, 1368 (N.D. Ga. 2000) (Forrester, J.), aff'd, 46 F. App'x 617 (11th Cir.

2002).

In responding to these Defendants' contentions, Plaintiff asserts that the grievance system in place at BCDC is not responsive to inmates, and therefore, the filing of a grievance would have been futile. The Court finds that Plaintiff was familiar with the grievance procedure at the Barrow County Detention Center as he filed a number of grievances regarding various events during his incarceration. Plaintiff did not file a grievance regarding these events or the actions of these Defendants. Therefore, the Court finds that Plaintiff failed to exhaust his administrative remedies. Regarding Plaintiff's claim of futility, this Court cannot read a futility exception into the PLRA because Congress has provided exhaustion is mandatory. See Booth, 532 U.S. at 742 n.6 (stating that Congress has provided in the PLRA that an inmate must exhaust administrative remedies and stressing that where Congress has provided otherwise, the Court will not read futility and other exceptions into statutory exhaustion requirements); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile.").

Based on the foregoing, Defendants Jonas and Myers are entitled to summary judgment.

24

## C.  Defendant Hansen

Plaintiff asserts that Defendant Hansen used excessive force against him while Plaintiff was incarcerated at the Barrow County Detention Center (Claim 4).  On July 21, 2006, Plaintiff had been cleared by medical providers to be returned to general population.  Detention Officer Albright went to Plaintiff's cell to escort him to a general population cell.  Plaintiff refused to go to a general population cell and demanded that he be placed in solitary confinement.

Officer Albright conferred with Defendant Hansen who offered to take over for Albright.  Defendant Hansen approached Plaintiff and advised him that he was being returned to the general population and that his cell assignment was not negotiable.  Plaintiff responded that he would not go there.  There is a conflict in the evidence as to what occurred next.  Construing the evidence more favorably to the Plaintiff as the Court is required to do on a motion for summary judgment, "Defendant Hansen assaulted [Plaintiff] in an unprovoked attack forcing [Plaintiff] onto the bunk and commenced to repeatedly slam [Plaintiff's] back against the cell wall, and the metal base of the bunk."  (Pl.'s Second Aff.

[78-5] at ¶15.)  "Defendant Hansen bounced up and down on [Plaintiff's] left

leg telling [Plaintiff] he would 'break my leg again.'"  (Id. at ¶16.)

> Whether a jailer's use of force is excessive, and thus violates
> the inmate's Fourteenth Amendment right to be free from cruel and
> unusual punishment, depends on whether the jailer's act shocks the
> conscience, and it necessarily will if the force was applied. . .
> maliciously and sadistically for the very purpose of causing harm.
> To evaluate whether actions shock the conscience, we consider the
> following factors: (1) the need for force; (2) the relationship
> between that need and the amount of force used; and (3) the extent
> of the resulting injury.  In addition to those three factors we
> consider as fourth and fifth factors the extent of the threat to the
> safety of staff and inmates, as reasonably perceived by the
> responsible official on the basis of facts known to them, and any
> efforts made to temper the severity of a forceful response.  When
> we consider whether the jailers' use of force was excessive, we
> must give a wide range of deference to prison officials acting to
> preserve discipline and security

Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (quoting Whitley v.

Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L.Ed. 2d 251 (1986)).

Based on the facts asserted by Plaintiff, the Court finds that Plaintiff

would be able to establish a claim of excessive force.  Repeatedly slamming

Plaintiff's back against the cell wall and the metal base of his bunk appears to

be more force than necessary to subdue him.  Also, the alleged statement by

Defendant Hansen that he would break Plaintiff's leg again suggests that he

26

bounced up and down on Plaintiff's leg maliciously and for the purpose of causing harm. Even though Plaintiff had failed to comply with a lawful directive by the jailers, the use of force described by Plaintiff exceeds that which should have been necessary to compel Plaintiff's compliance.

Based upon the factual dispute concerning what actually transpired in Plaintiff's cell, the Court finds that Defendant Hansen is not entitled to summary judgment.

### III. Conclusion

Based on the foregoing, the Collective Motion for Summary Judgment [68] by the Barrow County Defendants is **GRANTED, IN PART** and **DENIED, IN PART**. The Motion is **GRANTED** as to all federal claims against Defendants Smith, Robinson, and Katsegianes; and all claims against Defendants Jonas and Myers. The Motion is **DENIED** as to Defendant Hansen. Plaintiff's state law claims against Defendants Robinson and Katsegianes are **DISMISSED, without prejudice**. The Motion for Leave to Respond and for Extension of Time [83] is **DENIED**.

The remaining parties shall submit a proposed consolidated pretrial order within thirty (30) days of the entry of this Order.

AO 72A
(Rev.8/82)

**SO ORDERED**, this  26th  day of March, 2010.


_____
**RICHARD W. STORY**
United States District Judge

28